UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No.: 25-CR-122 (RBW) |
| DION ZELLARS : | |
| also known as THOMAS GOOD, : | |
| : | |
| Defendant. : | |
| : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its memorandum in aid of sentencing. The defendant, Dion Zellars, has pleaded guilty pursuant to a plea agreement to a one-count Indictment, charging him with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime in violation of Title 18, United States Code, Section 922(g)(1).

For the reasons herein, and based on the 18 U.S.C. Section 3553(a) factors, the United States requests that the Court sentence the defendant to a period of 29 months' incarceration, a sentence in the bottom half of the Guidelines Range. The government further requests that the Court impose a period of three years of supervised release.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On March 20, 2025 at approximately 4:25 p.m., four MPD officers were conducting patrol in full uniform in one marked patrol car as part of their evening shift. While traveling southbound in the 4200 block Southern Avenue SE, they observed several individuals congregating on the sidewalk in front of 4236 Southern Avenue. One individual—later identified as the defendant, Dion Zellars—immediately separated himself from the group, walked to a parked silver SUV, and attempted to hide behind it. Officers then exited the first patrol car to investigate.

1

Around this time, three other officers—also in full uniform—pulled up in an unmarked MPD vehicle. Zellars saw the uniformed officers in the unmarked vehicle, made some "jittery" movements as though he could not decide which way to go, and then took off running down the sidewalk while clutching his waistband. Multiple officers began chasing Zellars down the sidewalk. Around the time he reached the steps in front of 4252 Southern Avenue, Zellars held up a black firearm with his left hand, and officers yelled at Zellars to drop the gun. See Image 1; ECF No. 27 (Statement of Offense or "SOO") at 3.



*Image 1: Still image from Officer Bartley's body-worn camera during chase showing Zellars (red circle)*

Zellars ran up the front steps, along the side of the house, and into the back yard. As he ran into the back yard, Zellars dropped the gun, as well as a phone with a red case. Officer Bartley,

who was leading the chase, saw Zellars drop the gun and called it out to fellow officers as he continued pursuing Zellars.  *See* Image 2.  Other officers quickly caught up, stood by, and ultimately recovered both the gun and phone.   See Image 3.



*Image 2: Still image from Officer Bartley's body-worn camera showing the gun Zellars dropped (yellow) and Zellars (red) climbing the backyard fence*



Image 3: Officer photo of the abandoned gun before its recovery

Zellars hopped the fence and ran down the alley behind the house, turning into the backyard of a nearby home. Zellars tripped on the steps into leading into the yard, then multiple offers caught and handcuffed him. Officers recovered another cellphone from Zellars' pocket. Zellars initially identified himself to officers as Thomas Anthony Good, with Zellars' same date of birth. SOO at 3. The firearm was a Glock 29, 10mm caliber, with serial number BNTD074, with a laser attachment. *Id.* It was loaded with one 10mm round in the chamber and had a 15-round magazine containing fourteen (14) 10mm rounds inserted in the magazine-well. *Id.*

Zellars consented to the search of his phone. The phone contained text messages, photos, and videos from the same day documenting the gun with the Glock that Zellars dropped. Specifically, in a text message to "Boo" at about 1:19 p.m. on March 20, 2025, Zellars sent "Boo"

4

multiple pictures of the firearm, asking "Yu like this joint?"  *See* Image 4 through 6.  In response, "Boo" warned Zellars not to touch the gun: "stop playing with me", "asking me about a gun when u just did 10 years ! u shouldn't even be touching that."  *See* Image 7.  Zellars told "Boo" that the gun had "endless beams on it," likely a reference to the attached laser pointer.  *See* Image 8.  Zellars also said "I really won't be around my hood but when I move around," meaning he felt that he had to carry a firearm when he was in a certain area.  *Id.*



*Images 4 through 6 (L to R): Still images from Zellars' phone texted to "Boo"*



*Image 7: Text message with "Boo," in which Boo warned Zellars he should not be touching the gun*



Image 8: Further text messages with "Boo," referencing the laser pointer

Zellars' phone also contains a video taken about 2:46 p.m. on March 20, 2025, showing a firearm with a working laser pointer and flashlight consistent in appearance with the one Zellars discarded.

Zellars was initially charged in Superior Court case 2025CF2003031. On April 29, 2025, a federal grand jury returned a single-count Indictment against Zellars. ECF No. 1. On September 30, 2025, the defendant pleaded guilty to one count of Unlawful Possession of a Firearm and

Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation of Title 18, United States Code, Section 922(g)(1).

In the plea agreement, the parties agreed on the following calculation:

- Base Offense Level of 14: U.S.S.G. § 2K2.1(a)(6)
- 2-level reduction for timely acceptance of responsibility under U.S.S.G. § 3E1.1.

ECF No. 26 at 2–3. This calculation results in a total offense level of 12. *Id.* at 3. The parties further estimated that Zellars had convictions totaling nine (9) criminal history points, and as a result further agreed that one (1) point should be added under U.S.S.G. § 4A1.1(e) because Zellars committed this crime while on supervised release—bringing the total criminal history points to ten (10) and placing Zellars in Criminal History Category ("CHC") V. *Id.* at 3–4. Based on a total offense level of 12 and CHC V, the estimated Guidelines Range is 27 to 33 months of incarceration. *Id.* at 5.

## II. LEGAL STANDARD

The Sentencing Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). After calculating the Guidelines, the district court should then consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a) in determining the appropriate sentence. *See id.* at 50. These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the Sentencing Guidelines and related Sentencing Commission policy statements; and (4) the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

III.   **GUIDELINES CALCULATION**

The Government agrees with the Guidelines calculation in the Presentence Investigation Report ("PSR"). ECF No. 31 (PSR). The PSR adopts an identical calculation of the total offense level (12) under the Sentencing Guidelines as the plea agreement. PSR ¶¶ 16–26. The Government also agrees with the PSR's calculation that Zellars has convictions totaling 9 criminal history points, to which an additional point is added under U.S.S.G. § 4A1.1(e) because Zellars was on release at the time he committed this offense. *Id.* ¶¶ 32–34. Accordingly, the PSR correctly calculates Zellars' Criminal History Category ("CHC") as CHC V. *Id.* Based on a total offense level of 12 and CHC V, the PSR calculates Zellars' Sentencing Guidelines range as 27 to 33 months, which the Government also believes is the correct range and is consistent with the plea agreement. *Id.* ¶ 81.

IV.   **ARGUMENT**

The United States requests that the Court sentence Zellars to 29 months' incarceration followed by three years of supervised release. This sentence is sufficient, but no greater than necessary, to serve the purposes of sentencing under 18 U.S.C. § 3553(a).

   A.   **Nature and Circumstances of the Offense**

The nature and circumstances of Zellars' offense warrants a significant sentence. Zellars, convicted of multiple felony offenses, had been released into a halfway house less than a week prior to this offense. PSR at ¶ 31. After he acquired a firearm, he bragged about it to "Boo," who warned him that he should not be "touching" a gun given his prior convictions. Zellars claimed he needed the gun and took an admiring video of the gun's laser attachment—designed to make assist a user in aiming accurately. In other words, Zellars knew full well given his prior convictions

9

and contemporaneous evidence that he should have had a gun, and is now convicted of a serious federal felony as a result.

Yet when police showed up and began observing his group, Zellars, not wanting to be caught, made the decision to run from police.  During his flight, Zellars discarded the gun.  At the time, the gun had a round in the chamber, in addition to the fourteen rounds in the magazine.  Zellars' decision to discard the gun could have led to an accidental discharge, which was incredibly dangerous to Zellars, neighbors, and pursuing officers.  *See* D.C. Code § 22-4503.04(a), (d)(2) (reflecting a similar legislative judgment by criminalizing discarding a firearm and attaching a 10-year sentence for doing so after a prior felony).   The circumstances of this offense show a need for a sentence of significant incarceration.

B. **History And Characteristics Of The Defendant**

Zellars' history and characteristics weigh very heavily in favor of a significant sentence.  This is Zellars' *fifth* firearms conviction over the last 20 years.  PSR at ¶¶ 28, 29, 30, 31.  In several of these convictions, Zellars tried to flee from police and conceal the gun.  PSR at ¶ 28 (ran on foot), 29 (vehicle then foot chase, tossed firearm in passenger's purse), 30 (fled vehicle).  And in his 2015 Superior Court case, Zellars used a gun to shoot into the front door of a former romantic partner's house while they were on the other side of the door.  PSR at ¶ 31.  In that case, Zellars was convicted at trial of Assault with a Dangerous Weapon, firearms, property destruction, contempt, and obstruction counts.  *Id.*  Capping an escalation of significant sentences, Zellars was sentenced in 2016 to eleven years aggregate incarceration in that case.  *Id.*; *see also* ¶¶ 28 (2007 sentence to 3 years incarceration with 18 months suspended, ultimately returned to custody), 29

(2011 sentence to 22 months incarceration), 30 (2011 sentence to 5 years suspended and 4 years with all but 18 months suspended).

Zellars also has a poor record of post-release compliance. The PSR documents numerous bench warrants, re-arrests, and escape status (¶¶ 28, 29, 30). In fact, Zellars had been released to a halfway house on March 12, 2025—about a week before the incident here—on supervision on sentences for two different gun convictions. PSR ¶¶ 29, 31.

Given Zellars' past history of firearms offenses while on release, including his violent use of a gun, a 29-month sentence is more than justified.

### C. The Need For The Sentence To Be Imposed

The sentence must also deter Zellars and others and protect the public from Zellars. 18 U.S.C. § 3553(a)(2)(B)–(C).

A Guidelines sentence of 29 months will provide a specific deterrent by forcing Zellars to reflect, given the amount of time he has spent in jail already for firearms offenses, on his trajectory if he continues to reoffend. A significant period of incarceration followed by a lengthy term of supervised release—knowing that this Court will be holding him accountable with additional jail time—may also give Zellars additional reason to pause before he considers ever again obtaining a firearm while on release. Just as importantly, however, a Guidelines sentence would protect the public by ensuring that Zellars will not possess firearms for the period of his incarceration. Finally, a Guidelines sentence sends a message to others that the illegal possession of handguns on the streets of our nation's capital comes with significant consequences.

V.     CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence Zellars to 27 months' incarceration to be followed by a term of 3 years' supervised release.

                                                Respectfully submitted,

                                                JEANINE FERRIS PIRRO
                                                United States Attorney

                               By:   */s/ Michael L. Barclay*
                                                MICHAEL L. BARCLAY
                                                Assistant United States Attorney
                                                New York Reg. No. 5441423
                                                U.S. Attorney's Office for the
                                                District of Columbia
                                                601 D Street, N.W.
                                                Washington, DC 20530
                                                Michael.Barclay@usdoj.gov
                                                (202) 252-7669